Welcome to our January InBank session. We are missing, this morning, Judge Graves, your seating chair, he's feeling ill, however, he's aware of the proceedings and will participate, but his absence is, he's here in New Orleans, but he's not feeling his best, so he's not present, otherwise, we're all here and we're happy to welcome our newest judges, Judge Don Willett and Judge James Holt, to our InBank proceeding, this morning, and all else, we're in good shape to proceed. It's my understanding that all counsel have waived their uninterrupted time, so when you come to the podium, you're open for questions. My only admonition is that you stay in the microphone, because we do record the proceedings, and that you answer the questions as fully and succinctly as possible. I'll do my best to indicate, if you otherwise can't figure out, where the question is coming from, but by all means, answer the questions and we'll be good to go. All right, that said, first up, City of Brownsville, Mr. Beata. Thank you, Judge Stewart, and may it please the Court, the City of Brownsville is here on appeal from rulings on cross motions for summary judgment, one on liability in favor of the plaintiff, the other denying summary judgment for the City. The City is also appealing rulings on sufficiency of the evidence and evidentiary admissibility questions concerning damages causation, and finally, there is an appeal concerning the excessiveness of damages. There are a lot of issues in this case. There are several that the Court can decide and allow the Court to avoid some of the interesting amicus parties. These are, first of all, whether or not the City is liable under Section 1983. There is no official policy to withhold Brady information. The City's policy is that Brady information is to be disclosed. There's no pattern of prior Brady violations, and so the question in this case is whether or not the single incident exception, an exception that this Court has said can only be rarely applied and has only once been recognized as falling within the footnote of the Canton case, where a police department has absolutely no training for use of excessive force, has it ever been recognized. The question whether the videotape that was not disclosed along with the probable cause package is even exculpatory if the Court finds that the video is merely impeachment evidence that under Ruiz v. United States, the case is over on that basis. And then we finally get into the constitutional issues, which I think are very interesting, but the issue that's been briefed by all the amicus parties on whether or not there is a Brady duty in the plea context or what the duty should be really doesn't apply in this situation because what we're dealing with here are police officers that turned over information along with a probable cause package to a prosecutor, and that's the end of it from a police standpoint. The police have no control over the plea bargaining process. The police don't dictate what discovery would be done by the defendant. The police, if they've not received any request from the prosecutor for anything in addition to what's been turned over as part of the probable cause package, have absolutely no involvement at all in the giving of a guilty plea. And so I think that this case raises a different set of issues from the standpoint of police. And this case very well illustrates that in situations where a case is not worked up for trial and the prosecutors are not working with the police officers and gathering information, it sometimes will happen that things fall through the cracks, that the police officers don't always think to turn over everything with the probable cause package. Is there a fact issue on the training provided to the police as to what investigatory materials need to be turned over? Let's see. I'm sorry, I didn't... I said, is there a fact issue on whether officers have been trained on what investigatory materials need to be gathered and turned over? Brady training for the officers. There's not a fact issue on that point. The training claim was not relied upon by the district court in her ruling, and that issue has not been brought forward in any kind of a cross point by the appellee. But let me just answer your question by what I know that exists in the record. As I understand, based on the testimony of the city's expert who was a training officer for the Department of Public Safety, that Texas police officers, in order to be certified as officers, receive basic training in Brady obligations. And that is that exculpatory evidence, impeachment evidence, needs to be disclosed. As a practical matter, all the fine points about what is impeachment, what's exculpatory, police officers are not lawyers, and they understand the rule in a very layman-like way, that all evidence that pertains at all to a criminal case should be turned over. All the fine subtleties about whether it's impeachment or whether it's inculpatory or something that they're focused on, if it pertains in a discovery sense, it's turned over and that's what they're taught. There's no testimony to the contrary, right? Every one of the fellows who was deposed said we turn everything over. That's what they say, that the normal rule is that we turn everything over and that there have not been any reported violations of Brady by the city of Brownsville. I mean, so the system, at least as a general practice, is working there. We have this case. You have a unique situation here, don't you, in that this is a civil damages case. Everything that's relied on was either on direct criminal appeal or habeas or something like that. So how does the framework of suit filed after the state has declared the plaintiff not guilty, how does that affect all of these other rules that come from different kinds of cases? So, Judge Weiner, I think that's a great question. You know, most of the cases come up in the habeas context or they come up in the context of all the other sorts of criminal procedures. Here's a 1983 case and it involves a plaintiff who secured habeas relief following a, giving a guilty plea. What's his burden in that case to show that, and in this particular case, his theory was that he would not even have been, he wouldn't have been convicted and so therefore all the time he spent in prison is the measure of his damage, that the court should quantify all this pain and suffering for that. All this business about training and so forth in this basically tort suit only has to show, doesn't it, that the city or some of the city's employees had that tape and didn't turn it over. Well, as I understand your question, all he has to show is that they had the tape and didn't turn it over and therefore he's able to recover all of his damages. Is that the question? I'm asking you to comment on that. Well, I mean, there are a number of layers of arguments that are all set out of the brief and I'll try to do it in as simple a way as I can. You still have to find out the difference between whether it is a negligent or even grossly negligent act of individuals versus what the district court held as a matter of law, which was that it was single incident liability fastened on the, on the sheriff because otherwise you don't get to municipal liability, right? That's correct. I mean, there is, there's the question, there's the question as to whether or not the officers committed a Brady violation in the first place. So, you know, the question is, you know, who has the obligation to turn it over? Is it everybody in the police department, people whose job it is to work with the prosecutor, or is it only the job of those who are assigned the task of interacting with the prosecutor? Can I ask a question on that? Starting sort of first principles, highest level of generality, this is a Ruiz question. Would you agree that it is a due process violation for the prosecutor at rearrangement to give a factual basis that's inculpatory that the prosecutor knows is untrue? Yes. Yeah, I don't think there's any question of that. So, okay. So the prosecutor cannot proffer a factual basis. This gentleman's guilty plea occurred in March of 2006, and the district attorney gave as the factual basis, Officer Brown's incident report. Officer Brown's incident report starts the narrative, both detention officers entered the cell to take the subject over to the padded cell until he calmed down. So my question to you is, is that starting sentence to the narrative that the government is giving the court that's going to accept the guilty plea, is that sentence contradicted by the video? Put aside imputation attribution. If the prosecutor had had the video, would that video contradict the factual basis that was given to support his plea? The answer is no, and I've laid that all out in the brief. The video does not undermine the elements of the crime on which Mr. Alvarez was charged. One final question, because you'll have a lot of questions. Would you agree, though, it would be Brady had the parties gone to trial? Because even if it doesn't directly exculpate, it's certainly inconsistent with the videos, inconsistent in that victim areas never entered the cell to take out Alvarez. The video shows Alvarez exits and then he's surrounded. Fair to say or not? Is it Brady had they gone to trial? You know, I don't believe so. I don't believe so. And I'm not trying to be evasive, but I can't remember the specific detail that Your Honor is referring to where they go into the cell and get him as opposed to whether they coax him out. So that detail, I'm not familiar with enough to answer specifically. On the point concerning the liability of an officer for a Brady violation, to start the whole analysis, because if there's not a Brady violation by an individual officer, there's not municipal liability. And we don't even have to ask of whether the chief was deliberately indifferent to a system that was highly likely to produce a Brady violation. I mean, there are two levels of analysis here. First of all, was there a Brady violation by any individual officer in the police department? Secondly, is the city liable because that one incident can be attributed to something that the chief did that he was deliberately indifferent to that was very highly likely to produce the Brady violation that occurred in this case, assuming there was one. And I don't see that there was a Brady violation committed on this record. And the reason is, number one, the officer who was charged with the task of interacting with the prosecutor was not aware, did not know of the video. Now, one can question, why didn't he ask about the tapes, the cameras in the jail cell that were plainly visible? The record will show that his deposition is that he worked for the police department for many years. You're talking Officer Correjo? Correjo, yes. The city had a closed-circuit TV system in the jail for many years, and he knew that the closed-circuit TV was not recording. Unknown to him, within a matter of months before this incident, the city upgraded the video cameras in the jail and gave it the capacity to record what was being videoed. So no longer did the jailers in the office have the capacity to see what was going on in the building. There was a record that was being made of it, and that's where the slip-up occurred that he didn't ask for a copy of the video. Had he done so, we wouldn't be here today, at least not on this issue. But he didn't. So when he sent everything over to the prosecutor's office, the video was not included in it. The video that was made, a copy was made of, and this is all said out of the brief, the video that a copy was made of went up the chain of command in the form of an administrative review of a disciplinary, potential disciplinary problem. Did the jailer use excessive force in this takedown in the jail? I mean, everybody… I'm here for a fact issue on whether the department and the chief in particular had a practice of not allowing materials from an administrative or IA investigation to get forwarded to the criminal side. I know you say that policy only applied once it got to the IA stage, but there's testimony from Lieutenant Etheridge, and he says when I say administrative investigation and when I say IA investigation and when I say workplace investigation, to me, they mean the same thing. So what do you… That was what Etheridge said. When you read that testimony in context, he's saying, you know, he doesn't know, he's not handling the administrative, he doesn't know. But there's not any set policies. I mean, one of the things you'll find in this record is that… But it wasn't turned over here. It wasn't turned over in the Lopez incident, which is what led to it being discovered ultimately here when it was discovered mid-trial at Lopez, right? Well, the Lopez, as I understand it, and this is not your record, and so I'm going to tell you from what I understand being outside the record, but the video in the Lopez situation, which surfaced after the Alvarez situation. So this is not something to put the city on notice that there was an issue about this. Previously, it was before trial, while the prosecutors were interviewing the jailers, that the jailer mentioned, well, this is on the video, this is on the video, and the prosecutor at that point realized, oh, so there's a video. Well, and there's another feature in the Lopez case, which Mr. Garza testified to in the state habeas hearing, which is that it was his normal practice to inquire about the existence of videos. Now, we have no testimony, do we, that Dela Fuente, Arias's original lawyer – sorry, Alvarez's original lawyer – made any such inquiry. There is no evidence to that effect. Do we have any evidence as to how this redacted video came about? Well, the – it was – as I understand it, I wasn't part of the Lopez civil case, but as I understand it, Lopez, after he was acquitted, filed suit against the city. Well, I understand that. It came up – supposedly came up during discovery. But how is it that it became a redacted video? I don't know how it became one. All I know is that the complete video was produced and that only a portion of it was sent to the Court of Criminal Appeals. That's a little suspicious, isn't it, under the circumstances that confronted Mr. Lucio and DA Villalobos later on. Yes. One can draw those conclusions. I mean, wasn't – wasn't the whole sequence of Alvarez habeas pleadings in the exhibit list of the government and the Villalobos prosecution? Yes. I mean, it was – it was part of it. It was not a count in the indictment, but it certainly came up in that connection. It did come up in trial? It came up in the case. I didn't attend the trial, so I can't tell you the answer to that. Is there evidence in the record – hello? I'm over here. Hi. There's so many of us. Is there evidence in the record that the normal person who gathered items to disclose knew, in fact, that there was a video system and routinely would get the videos? Is there any evidence of that, that the person who would normally gather things and take them to the prosecutor knew that there was, in fact, because the officer here didn't seem to know. But does the person who needs to know know that? There's – I don't remember there being any evidence on either side of that question. Mr. Beata, you – didn't you submit an affidavit by Officer Hernandez, the chief of the Criminal Investigation Division, in your renewed motion for summary judgment at the request of Judge Tagli, and Officer Hernandez identifies checklists of what the criminal investigators were supposed to amass in order to send information to the prosecutor in at least two times in that exhibit, there's reference to videos. You don't remember that? No. Well, it was there. It's in the record. Leading question? Yes, leading question. Anyway, you don't think I'm misremembering. Never ask a question unless you know what that witness is going to say. Other questions? Press on. You're still on your clock, Mr. – Counsel, can we reach the Brady issue even if you're correct that there is no policy as a matter of law? Do we have the discretion to reach the issue anyway because we have opinions in the area already and we've taken the time of all the people? Or should we not? And what is – what would you say as to that? Well, my review of that question is that the court has discretion to basically do what it wants. It's a prudential standard that the constitutional issues are not decided if there are other grounds on which to decide the case. I would put this in the category of Pearson versus Callahan where the Supreme Court has the immunity context that you have discretion to either go decide item one on the immunity defense, the merits issues, rather than the clearly established. If that's the way you want to do it, the courts have flexibility in doing that. But Pearson says the preference is, in the qualified immunity context, which may or may not be analogous, that the preference is to decide the constitutional issue because if it is, the issues are never going to get flushed out and provide guidance. Yes. And so I'm aware of an en banc case that was decided by this court. I believe it was McClendon versus City of Columbia, if I'm not mistaken, where you had before you this state-created danger theory and there were some questions as to how that may apply on the merits. But then there was also the questions about what's clearly established law. And so in that case, I remember that the court wrote, in effect, like two opinions. I don't know whether one becomes dicta over the other, but rather than waste the en banc court's time, if the issue here is whether or not the court wants to straighten out some of these Brady-related issues, then you could even take that approach. I suppose it's within your discretion to do that. I'm not going to say that there is a hard and fast rule that you must and cannot decide the constitutional case. I mean, if as a matter of law, the district court erred on municipal liability and there's no ground for municipal liability, anything we would write beyond that would, you know, you'd have to go a fur piece to write important law on Brady beyond that, don't you think? I think that's right, Your Honor. I mean, you know, in the way of burning up judicial resources and deciding what I think would be a difficult question on not the very best of records. I'm going to ask you a follow-on to that because we talked about training early on and said, well, that wasn't really mentioned in the district court and so on, but if we were to conclude Brady does apply in a situation like this, but further that the single incident rationale was not supported, then wouldn't it make sense to send it back to the district court on the training issue? Well, I don't think so because you'd still have a single incident problem. I mean, you don't have a rash of these situations that have occurred because officers haven't been trained. This was the first incident of this nature that occurred. The second one, if you want to say it was a Brady violation involving... The training can lead to a single incident if the effect, if you never, and I know you said it gets your certificate as a police officer, you have to go through the training. That seems a little weak to me if you've got an officer who's been there 20 years and his last training was 20. It's like saying, well, you learned this in law school. The difference in the Thompson versus Connick was, well, you're lawyers, you have these duties, you have to go to CLEs and so on and so forth, so it wasn't just you learned it in law school. If these officers aren't being trained on Brady, then isn't it inevitable a Brady violation will happen? Again, I would say that there is training on Brady in the sense that the police officers are taught to disclose all pertinent evidence. When is this teaching? When does this occur? What does the record tell us on that? Is it just when they get their certificate 20 years ago or is it like a CLE kind of analogy? As I recall, I don't remember that there being any kind of CLE on Brady. I can say for certain that Albert Rodriguez, who was the chief training officer for DPS, said that officers, as part of their schooling to become certified, do receive that training and, of course, there's on-the-job training. That's the way things are done, that everybody knows because it is the practice of the police department to turn everything over. There is that kind of evidence, too, the on-the-job training. I guess you don't tell your officers what everything is. You don't tell them that there's going to be videos and stuff, and you can say give them everything. However, you don't tell them about the secret file room and the secret video and all of that, and that's kind of, you know. Well, this was not a secret video or a secret file room. It was a plainly visible office in which videos were taking pictures, and the officer didn't think to ask, is that camera making a record or is it simply a closed-circuit TV? I mean, you know, do you need to train the officer on that level? And that was sort of the issue that came up in the Connick case. I'm looking at the magistrate judge opinion, and I do not see a claim of failure to train. Is that accurate or not accurate? There is not a failure to train reference in the magistrate's order. There is one that is referenced in the pleading, a failure to train claim. But if they didn't cross-appeal, how can we take that up? That's right. It was not part of the case. It wasn't taken up as cross-appeal for a point on which the court could render judgment or remand on that basis. All right. Thank you, Mr. Kennedy. You have preserved your rebuttal time. Thank you, sir. We'll hear from Mr. Shanker. They have the government. Thank you. Good morning. May it please the court, V.J. Shanker for the United States. Your Honors, if I may, I'd like to start with where we ended in our brief, which is by saying that no one has an interest in an innocent person pleading guilty. In the federal system, we have policies and procedures in place to minimize the risk of that occurring. But the question here is whether, as a constitutional matter, in the hundreds of thousands of cases that are resolved by guilty plea in this country, the prosecution must essentially disregard a defendant's expressed desire to admit guilt under oath and must search his or her files for any and all information that might bear on the defendant's tactical decision whether to plead guilty. Wouldn't that be true in a direct appeal or a habeas? But why is it true in a civil tort issue? It doesn't require that there be a constitutional violation. It only requires a violation. Well, Your Honor, this isn't, as I understand it, a normal civil common law tort claim. This is a statutory Section 1983 claim, which does require establishment by the plaintiff of a deprivation of a constitutional right. And so, as the panel correctly held, the plaintiff here had to establish the deprivation of a right imposed by law, in this case, a constitutional right. So we would have to, in order to grant or award damages to the plaintiff, find some sort of constitutional violation. So you're saying that the panel got it right on that? I am. Thank you. Well, if I understand correctly, your position is that defendants may waive their rights to waive a maternity leave under state age. You're not saying that they have to. They can preserve those rights. In other words, they can condition their plea on receiving the Brady agreement. Well, certainly, Your Honor, during the plea negotiation stage, a defendant could bargain with the government and could ask for any exculpatory information that exists, and that would be up to the parties to negotiate. But once a defendant actually enters a guilty plea, the act of doing so waives a Brady claim, which is a fair trial right that the Supreme Court has clearly said is a due process right that applies at trial. What I guess I'm wondering is, under your position, defendants have the choice. They can waive or they can preserve. Whereas under the other side's position, they only have to preserve. In other words, it seems that your position is actually, in a sense, more favorable to defendants. Your Honor, again, I think they could not preserve a Brady claim once they enter a guilty plea. That guilty plea itself waives trial rights, and a trial right includes the right to Brady exculpatory information. Now, again, pre-plea, during the plea negotiation process, if the defendant wants to bargain with the government to receive information before actually entering the plea or waive the right to do that, then he or she could do that. But once a plea is entered, that waives trial rights. What is the federal remedy for an individual who is actually innocent and proves his innocence in such a hideous proceeding that he did not commit the crime? Say Brady is not available to him. What is his avenue of remedy? Your Honor, there would be potential post-conviction avenues for relief in that situation. Like what? A Section 2255 petition. A release. Correct, Your Honor. What would be the underlying constitutional claim? Because at least our Circuit did not have a freestanding innocence claim that's recognized on habeas, and there wouldn't be a Brady claim. So what would be the basis for the relief on post-conviction? Right, and I know the Supreme Court has arguably left that question open, whether there's a freestanding actual innocence claim. I know this Circuit has said, as Judge Costa has characterized it, the most likely avenue for relief in that situation would probably be an ineffective assistance claim. And I'm not opining on the validity of such a claim in this case. I do know that certainly defense counsel in this case could have requested the video at issue. Of course, this case wasn't. That wouldn't be available if defense counsel requested everything, prosecution hit it, and then if it comes out later, then there'd be no habeas relief. That's right. As your brief suggested, there are remedies if some... I mean, first of all, this hypothetical about an innocent person proving guilty, how many examples of that are there? Your Honor, I think that's the right question. I don't know the exact answer to that. I know that some of the amicus briefs that have come in have talked about the incidence of actually innocent people pleading guilty. Respectfully, that's not the meaningful statistic for the question before the court in this case. Really, the meaningful statistic is how many actually innocent people pleaded guilty where the government had in its possession evidence of factual, actual innocence and didn't turn it over and the defendant would have gone to trial and the defendant would have been acquitted at trial. I have to say, though, that the way Mr. Alvarez's brief is structured, he doesn't talk about actual factual innocence, which is not proven by the unredacted video here. He talks about material, non-impeachment, exculpatory evidence. Can you comment on that characterization? Yes, Your Honor, and I think that's really where the court has to focus because any rule that it establishes in this area would apply to the vast majority of cases where we're not talking about a discrete piece of evidence that, and again, I'm not opining on whether the video here does do this, but if we assume the video here shows actual, direct factual innocence, that's an extremely small sliver of the cases we're talking about. What's the government's position in the circuit's post-release that do seem to constitutionalize what right now is a professionalism requirement? So, specifically in the Seventh and Tenth Circuit, is the government asking for an, back to Judge Ho's question, is the government asking for an explicit Brady waiver? Because those circuits, whether you think in a developed way or not, have suggested there's a plea pre-constitutional requirement as to exculpatory information. Well, Your Honor, so I think several answers to your question, Your Honor. We're not asking for Brady waivers because, again, once a defendant enters into a plea, that waives the Brady concept entirely. You have not gotten to a trial. But the government accepts that in those circuits, there is a constitutional plea pre-duty. Well, Your Honor, actually, I think if you read those cases a little more closely, I'm not suggesting you haven't, but it's important to read those cases quite closely because while they do have lines, language that suggests a broad rule, what all of them have held, and it's the Sanchez case from the Ninth Circuit in 95, and the U.S. v. Wright case in the Tenth Circuit in 94, both of them say, yes, you have a plea pre-Brady right to exculpatory information. Both of them then go on to say what we're actually talking about is an actual piece of evidence that the government already has, the prosecutor, not the prosecution team. We're not talking about that. These cases talk about... I understand that. Last question for me. Last question for me is, if we were to reinstate the panel, which reinstates our Conroy and does the federal government see a split in the circuits or not? I don't, Your Honor. Counselor, one of the bases of your brief is that this would be cumbersome on prosecution teams and delay pleas, but is that really the case in this circuit where you pointed out that the federal government already has this in their manual, that they're doing this in their prosecutor manual, and the state of Texas already mandates it by statute? So are you saying that because of Mississippi and Louisiana that this would be cumbersome, or how would this be cumbersome here in this circuit? The difference, Your Honor, I think goes also to Judge Higginson's question, which is what we do in the federal system is we turn over exculpatory evidence or potentially exculpatory evidence that we already have before a defendant enters into a plea. What the rule that my colleagues on the other side are asking for is very different from that. They're asking for a rule that would essentially require the government to search all of its files and locate all exculpatory information before allowing a defendant who wants to go into court and admit his or her guilt. They would have to search all of their files, the government, before allowing... Wouldn't one of the complications of that theory be that if the DOJ is investigating someone and the SEC is investigating someone and the Office of Thrift Supervision is investigating someone, how could you confine that obligation to the DOJ, even though there were separate investigations? Yes, that's exactly right, Your Honor. And again, in the vast majority of cases that we handle, it's not a discrete piece of evidence that goes directly to a defendant's guilt or innocence. We're talking about wiretap cases. We're talking about massive white-collar cases with warehouses full of information. The government would have to... And I realize my time is up. Finish your sentence. The government would have to essentially search all of those records before allowing a defendant to plead guilty simply based on a Brady right that had been extended to the pleading stage. All right. Thank you, sir. Thank you. You're filing in your argument. Mr. Hughes? Thank you, Your Honor, and may it please the Court, Paul Hughes for Appellee George Alvarez. Due process obligates the government to disclose exculpatory evidence in its possession before a defendant pleads guilty. Were it otherwise, there'd be no constitutional barrier to a prosecutor taking a guilty plea despite the government possessing evidence such as a video or a DNA test demonstrating the defendant's innocence. The reach of Brady follows from the Supreme Court's ineffective assistance of counsel cases. Imagine that Alvarez's criminal defense lawyer had been given a copy of the video, but he failed to look at it or tell Alvarez of its existence. That would have been a clear example of ineffective assistance of counsel under Frey and Padilla, enabling Alvarez to challenge his plea. There should not be a different result if the person who suppresses the evidence is the government prosecutor rather than the defendant. Whenever we talk about due process, it's a flexible sort of thing, and depending upon the facts of the situation determines how much process is due. Why is someone who has sworn to their guilt, has been presented all the rights that they don't have to testify themselves, represented by counsel, the full kind of play of rule of law, and makes an intentional decision to plead guilty, entitled to the same due process as someone who has confessed his guilt as to someone who is contesting his guilt. It seems to me that there are two different standards of due process, and although you may be entitled to Brady due process rights in the trial situation, it does not follow at all that those same due process rights are entitled to someone who is voluntarily pleading guilty. The Supreme Court has looked at that same theory of argument in the ineffective assistance of counsel cases, where the government has said the backstop of trial is a sufficient fairness guarantee to ensure any violation of ineffective assistance of counsel is satisfied. The Supreme Court squarely rejected that argument in Frye and Padilla, and Lafler is saying that that doesn't accord with the modern reality of the plea system, where 94 to 97% of cases end in pleas, such that the plea is, in effect, the main event. And therefore, the Supreme Court, in the ineffective assistance of counsel case, said basic minimal protections of fairness still apply to the plea context, and it's not enough to say that there's the backstop of the trial, because Brady is so essential. Let me just, you know, fairness is another one of those malleable words, and fairness in a plea situation is not necessarily the same fairness in a trial situation. I don't think you've answered my question, but you can go to the next question. If I may try a bit further, Your Honor, the fairness stems here from the fact that the power of the evidence is so strong, and the burden on the government compared to impeachment evidence is minimal, and that's the analysis that the West Virginia Supreme Court and the Nevada Supreme Court both unanimously found weighed in favor of finding a fairness due process obligation, and that all the other circuit courts that have addressed this question have found that that fairness balance weighs the same direction. That doesn't satisfy me, but I'm hard to satisfy. Thank you, Your Honor. Well, first of all, I sort of have a problem with your theory that this was, that this was, evidence was unavailable to the defense. We know that Brady, when the, normally when the defense knows about evidence, it's not being suppressed under Brady. Mr. De La Fuente testified at the habeas hearing that he had been a criminal defense lawyer in Brownsville for 20 years. Surely he knew there were videos in the jail. Two of the jailers testified. There's, no, Officer Correjo, the criminal investigator, and Arias, the jailer, said there's signs all over the jail that say, if you're in the jail, you're being videoed. So you're, you know, it seems to me it could have been fairly easy, 2254, for, or state habeas, for Mr. Alvarez to say his attorney, De La Fuente, was incompetent. Yes, Your Honor. For not ascertaining the existence of video recordings. Yes, Your Honor, if I may answer that question in a few ways. I'd like to address the facts of that question, but before I get to the facts of that question, just in terms of the posture of this case, many of the questions about Section 1983 that the Court has been asking, I think, are simply not present in this appeal. Because, again, we're on a posture where the liability was granted summary judgment in favor of Mr. Alvarez. If the Court thinks that there are factual disputes to that, the proper resolution of that would be to find that the summary judgment was wrongly entered, and then remand. It's, again, because the summary, the government, the city of Brownsville. What are you saying needs to be remanded? Well, Your Honor, if there's a question, if there are factual disputes about this case, we are not up on the government's summary judgment motion, which we deny. You're willing to vacate the $2 million judgment or remand the whole thing for new trial as long as you get some rule about breeding? That is certainly not our preferred approach, Your Honor, and I will address the Court's question why the Court should not do that. I'm just saying, I think the worst case scenario for Mr. Alvarez is the Court were to find that the summary judgment should not have been granted in his favor in terms of liability, not that, because the government's summary judgment, the city's summary judgment motion is interlocutory and not before this Court. Let me ask you, you put a great stock in Frye and Padilla, but those cases were decided after 2010, were they not? Yes, Your Honor. So at the time that all of this occurred, Mr. Alvarez had pled guilty in 06. He got his habeas relief in 2010. What you're relying on is law that postdates 2010, plus Ruiz, which clearly didn't give you a right, and yet you want to fix $2 million judgment on the city of Brownsville for not having the foresight to know about extending Brady into pre-plea non-impeachment exculpatory information. To that, Your Honor, a few points. There's no qualified immunity here, of course, because this is a municipal claim against the city. And additionally, the cases in our favor from the 7th Circuit, from the 10th Circuit, from the 9th, the 8th, the 6th, all predate that. And the 1st and the 2nd and 4th all have great doubts about whether Brady can be applied pre-plea, do they not? And the other cases that you cite, not a single one of them ended up giving relief to the defendant, correct? Well, I think in West Virginia, the Buffy v. Ballard. That's the only one. Well, and that just goes to say that the materiality standard is demanding, and we certainly have no quarrel with that, which shows that there isn't any sort of floodgate concern stemming from this. We agree. In these various, in the state courts or in the circuits that you say interpret Ruiz to require a constitutional pre-plea disclosure, can a court that has in front of it a defendant, at arraignment, who says, I want to confess my guilt, under your proposed rule, does the prosecutor have to say, defendant, you cannot confess. You've got to be detained until we process the rape kit, until we get the lab confirmation that it's cocaine, it's not something else, or until we get the traffic video that shows that it was a red light and you didn't come to a full stop. So the specific question I have is, in all these jurisdictions where you say there is a constitutional pre-plea rule with the government's severe consequences, do courts and the government have to refuse to let the defendant confess, because the government already possesses and may have processed and developed exculpatory information. It may be there, but the prosecutor doesn't yet have it, because the defendant, day one, says, I don't want to plead, I want to confess, and I don't want to be detained. What's the answer to that? There are a few answers to that. So the first question, Your Honor, is I think, as the initial part of your question suggested, the government might not have possession of the evidence, and if the government... No, the government, I'm asking you to assume the lab technician for the government has processed it, and it is sugar, or they've developed in Arizona the traffic video, and the person did come to a full stop, or they already somewhere did the rape kit, and it's somebody else. But the defendant says, day one, I did it. Does the government, under your rule, have to say, you cannot confess? No, Your Honor, the government does not have to say, you cannot confess, and that's for a few reasons. First, the question is not before the court, but a subsequent question, assuming we're right, is that, can this right be waived? And that's not an issue that's here, and that's something the court would consider at a later point. But second, if the defendant wishes to walk into court and confess, then that is certainly their right to do so. The obligation that the government... But that's this case. He walked into court and chose to confess, and the prosecutor, no one's saying the prosecutor knew. That's this case. The obligation of the government is to identify whether it has exculpatory evidence in its possession and provide that to the government. I say that often, but it is. The ADA, I'm sure you're familiar with this, 3.8D, does say prosecutors have a pre-plea duty. But in the next sentence, they say, I'm going to read, prosecutors are not, not further obligated to conduct searches or investigations for favorable evidence and information of which they're not aware. And, Your Honor, the rule that we advocate, I think, stems from two things that are currently true, which shows that there's not a practical burden. The first is that, as I believe the city acknowledged, prosecutors have to look at their file before they make the proffer to the court as to what the evidence would show if they took the case to trial. They have to look at the file. Second, under Brady, government investigators must identify exculpatory evidence and provide that to the prosecutor. That's a well-established rule. All that the rule we urge requires is an investigator provide the information to the file, perhaps that the prosecutor would be better if they have a policy telling the investigator to flag it, such that when the prosecutor looks at the file in the pre-plea setting, if there is any evidence the government possesses, the prosecutor will be aware of it and can therefore disclose it. You concede in this case that the DA's office, the prosecution team, was unaware of the video when Alvarez entered his plea. No, the prosecution team, that's right. Yes, Your Honor. Yes. And I'll say, though, about the practicalities of this issue, this rule has governed in several circuits for several years, in the 7th, 10th, 9th circuits elsewhere. It's governed in West Virginia and Nevada. And there's certainly no suggestion by the city or by the United States that this has any practical or pragmatic concerns, despite this rule being the rule of law for several decades. A number of district courts have local rules requiring pre-plea disclosure of brevity as well. And Texas has the Michael Morton Act, right? Yes, absolutely, Your Honor. If you advocate a waiver, like I understand with Michael Morton in Texas, you can file an explicit waiver by the defense. Yes, and Your Honor, the question of how a waiver would factor in is just something that's not before the court in this case. And so that was something that how the waiver factors, I think, would be a subsequent question if the court agrees with us as to the scope of the waiver. What is your position with respect to whether the rule that you advocate would open up the avenues of discovery that don't exist now in criminal cases? Well, I think that the requirement of the government to obtain and maintain exculpatory evidence currently exists. The only question is when that evidence must be disclosed to the defense team. So it doesn't increase the obligation or the burdens on the investigators to identify and maintain exculpatory evidence. It's just a question of when along the process it must be disclosed. So I don't think it expands criminal discovery. I think it's just a question of the time in which that criminal discovery in certain limited cases must be disclosed to the defense. So you're saying that the right that you urge now does not require an accompaniment of the right to discovery? No, Your Honor. It does not alter a right of discovery in any way. It's adjunct to the existing rights that exist under Brady. It's just a question of when Brady evidence must be disclosed. It's no additional substantive right to discovery beyond what currently exists under the constitutional structure. Who do you say was the lowest level investigator in this case? Who was the very first person by name that you think was, quote, an investigator, unquote, within the meaning of Brady? Who? Name the name. Your Honor, that's, I would suppose it could be Etheridge who investigated from Internal Affairs. But that's the theory. Have you read the record? Yes, Your Honor. The whole record? I've not read every page of the record. Do you know who Officer Correjo was? I believe he was an officer who investigated in the underlying circumstances. Isn't that the answer to Judge Owen's question? I'll take the representation, yes, Your Honor. But the theory, our constitutional theory here trains on Chief Garcia's behavior. Because the theory in this case that the court granted summary judgment on, and let me know that the court granted summary judgment on this theory does not rule out alternative theories, for example, a failure to train. You didn't plead failure to train. Yes, we did, Your Honor. It's in the complaint. Well, if you did, the magistrate judge didn't rule on it. You did not bring that forward. The only issue on which the district court granted summary judgment was single incident  Had nothing to do with failure to train. In fact, the district court said explicitly there are policies separating the CID and internal affairs. They are not facially unconstitutional. Indeed, they may even be required constitutionally. So there is no failure to train issue properly before us. I agree with that latter point, Your Honor, but that's because when the district court granted summary judgment on liability as to the policymaker activity of Chief Garcia, it didn't have to consider alternative theories. Once it found one ground of liability for the CID. But you had to cross appeal if you wanted to support or at least refer to it in your briefs if you wanted to support the judgment. But, Your Honor, there was not a failure to train theory that was rejected below. So there was nothing to cross appeal. What was in your motion for summary judgment? Sorry, our motion for summary judgment, I believe it contained both a failure to train theory as well as. But you don't have to cross appeal if you are successful on one claim. Is that your position? Our position was we advanced multiple claims to the district court or multiple theories of municipal liability. The court agreed with us on the policymaker liability of Chief Garcia and that resolved the analysis once it found one ground. You didn't cross appeal unless you're seeking to get more relief or different relief than you got. You're just seeking to affirm and we can affirm for any basis supported by the record, right? Yes, Your Honor. The argument is was it supported by the record. So tell us about that on the failure to train. But if it was not argued and proved and even mentioned to the district court below, we shouldn't be getting into that. And the magistrate judge wrote an extremely thorough opinion here and nothing in his opinion relies on failure to train. And again, because I think that's the policymaker liability that I'm happy to speak about in a moment if Chief Garcia... No, because he had separate, he did have a question about the municipal liability of the city of Brownsville. And he concluded there was a fact issue about the municipal liability of the city of Brownsville and that had to do with the policy that where he was under the impression about the internal affairs keeping everything separate from the criminal division. Yes, the principle... But not failure to train. That's right, Your Honor. Because the court found that the municipal liability of the chief was sufficient, it didn't have to reach failure to train. What did you, who did you allege was not adequately trained? The investigators from the internal affairs division. Name their names. It would be Etheridge, it would be Correjo, and the whole chain of command because as Chief Garcia testified that there was no training subsequent to what they received from the police academy and that these officers had testified that they couldn't identify what exculpatory evidence was much... I thought they all said we were supposed to turn over everything. That was the policy. We knew it. The only person it seemed to me who dropped the ball was the jailer who downloaded the stuff from the computer. He was the one that said, I didn't... No one told me there was a policy not to give it. There was no written or implied policy from the chief not to give it. That's just the way I've done things. Well, the theory that the district court relied on, which we think is entirely correct, is that the way the chief had structured the prison or the investigation was that internal affairs, he said... That's not what his disposition says. Every person that testified in context said that the policy was to turn everything like a video over. Everyone said that. Well, Chief Garcia, and this is the record at 2748 and then later at 2750, acknowledged in his deposition that the internal affairs material should not be shared. It read in context. If you keep reading, he said that doesn't apply to things like the video. What he had said was in the structure that he created, the district court was very careful in its analysis of the factual issues here, was that the structure he created was he was the go-between between the internal affairs... I've read his deposition. That's not what he said about the video. Well, Your Honor, I think he said as a general principle that he was the person who reviewed internal affairs division reports and that he was then the person who would make a decision as to whether or not it was his responsibility to turn over Brady evidence to the criminal investigation division. Yet at the same time, he established a policy of not routinely looking at this material. Well, everybody should have to read that position for themselves because in context, he said that did not apply to evidence like the video. And Your Honor, if the court thinks that there's a factual question about that, again, we disagree. We think that the district court was correct in finding summary judgment. But again, to the extent that there's a question on that, worst case for Mr. Alvarez would be a remand. What the district court found was that it's a single incident liability because Chief Garcia did not read the report, was unaware of the video, acknowledged his responsibility to turn it over, and that that created a high likelihood of a Brady violation because the buck stopped with Chief Garcia. And the question I have about it, how do you know there's a high likelihood of a Brady violation? In the record, there are about five years' worth of what I believe were internal affairs report summaries, and a lot of them have to do with things like misuse of property, sleeping on the job, improper encounters with other people. You know, a lot of those internal affairs reports that he may or may not have read had nothing to do with excessive force. Your brief cites 13 incidents of excessive force, but only three of those resulted in charges against the detainee. And one of those is this case, and one of them is Lopez, where the video was turned over, and I'm not clear on the third one. So where's your deliberate indifference to a high likelihood that a Brady violation would result in separate charges? So there are a few different parts of evidence, and the district court details this at the record at page 1097. And as the district court recounts through the evidence, it's Chief Garcia's testimony that he was, one, responsible, and he had this responsibility to ensure that it avoided Brady obligations. Estridge, the head of the internal affairs, said that there would be flaws in the system if Chief Garcia did not review this information. But that's not the standard of deliberate indifference. Negligence, even gross negligence, is not the standard of a deliberate indifference. Well, Your Honor, I think this satisfies the standard of deliberate indifference. Well, you think so, and the district judge did, and I want to know your best case for single incident liability. We have Burge v. St. Tammany Parish on the record, which is a similar comedy of errors within the police department that resulted in information not being turned over to a prosecutor, and the court found no municipal liability. I think Burge is actually a very helpful case, as the district court found, for Mr. Alvarez in this context. And the key point of distinction between Burge and our case, which I think makes a very substantial difference, is that in Burge, the conduct that caused the constitutional violation was that of an individual officer or subordinate. So there, there was a need to rely on a failure to train type policy that required the deliberate indifference in that context, which the court found it was difficult to prove in single incident liability. Here, by contrast, the actual concrete decision that was made, which was not to look at, repeat it routinely, these incident reports, was made by the policymaker himself. But again, you're mischaracterizing what he said. He said, I didn't even read the report, and the judge says his failure to read the report meant that the video was not turned over, which in turn meant that there was a high likelihood that a Brady violation would exist. What the district court found, which I believe to be correct, is that he developed a structure where he was the fulcrum between these two divisions. But all she said is, all she said is, the district court, the policies failed. The fact that policies failed does not mean that they are unconstitutional, right? It means that they may be erroneous, they may be negligent, but it does not mean that they're unconstitutional. Well, your Honor, I think that conflates two separate policies. And the district court said the first policy that failed was the structure where Chief Garcia was the focus man. Let's stop right there, because with due respect, I mean, the Chief testified unequivocally more than once that the jailer should have turned the video over if he'd been asked for it. Everybody said, if I'd been asked for it, I would have turned it over. I wouldn't have asked the Chief. There's no problem giving it to him. There was no barrier regarding this video. The Chief said so. So in everything you're talking about in context are the internal analyses documents in the internal investigation chain, not the underlying evidence itself, which is the video. The jailer himself said if, I think it was Brown, had asked me, I would have given it to him. I wouldn't have to ask the Chief. He didn't think there was a policy like that. None of the evidence supports what you're saying, which is that it goes down to the video, that the Chief had a policy that you cannot turn the video over without my permission. The evidence is 100% the other way. Two things, Your Honor. First, I do think the evidence that the district court found does suggest that these were cabins and they were told not to do so. But even if the court disagrees with that characterization, which the district court found of his testimony, still, even if there was the conclusion, which would not be a conclusion I think the court could reach, but if there was the conclusion that the investigators on the internal affairs side could have turned it over, that doesn't obviate the fact that there was, in fact, a Brady violation that occurred in this case. And the question was, was that Brady violation that occurred something that resulted from the deliberate indifference of any individual in the police department? It is not about the deliberate indifference. You are either defending the district court or you're arguing a different theory here. Because precisely what she said, the policies failed. They were facially constitutional. She says that. And then she says exactly what I've said to you two or three times before. The buck stopped with Chief Garcia, his failure to read the – he said – and in your briefs you said, Chief Garcia acknowledged that he should have read that and he should have turned over the video because he's the chief. Now, that's what she – that's the theory that she adopted. Are you agreeing with that theory? Why are you proposing the theory that she didn't agree with? Well, Your Honor, I think we are agreeing with the district court's theory. But let me just say, to your point, I think there were two separate policy decisions that are at issue here and it's important to distinguish the two. Because the district court did say at the first decision – This is not a policy case, as the district court found. It is a single incident liability case based on a deliberately indifferent act in action by the chief. And I think that is properly viewed as a policy because he is a policymaker. But, Your Honor, the first policy decision that the district court identified was creating Chief Garcia as the go-between. And that's where, Your Honor, the district court found that that was not facially unconstitutional because it could work if there was diligence in doing so. Now, the district court says it's probably not a very good idea. The problem was not the creation of that structure. The problem was, subsequent to the creation of that structure, the district court – or the chief made the decision not to actually look at all of the reports. Let me ask you a question in an entirely different manner. Several times it has come up the phrase non-impeachment exculpatory evidence. It sounds to me like the evidence at issue here is both impeachment of the officer because it contradicts his statement and exculpatory. What is the purpose for referring to it as non-impeachment exculpatory evidence? Well, I think it's an interesting question. It is certainly the case that one piece of evidence can be both impeachment and exculpatory. In this case, it may well be that this evidence – Was it just to get around Ruiz? Well, Your Honor, Ruiz does discuss impeachment evidence. In the context where you have one piece of evidence that is properly characterized as both impeachment and exculpatory, as I believe the Buffy Court from West Virginia says, the proper characterization of that would be exculpatory if that has constitutional significance. But in terms of distinguishing between exculpatory and impeachment, I'd like to note that there isn't much of a practical barrier. I think that's demonstrated by the fact that the U.S. Attorney's Manual requires U.S. prosecutors to differently treat exculpatory and impeachment evidence. So the way that, in practice, the thousands of prosecutors around the country are making a determination between whether or not a piece of evidence is, in fact, exculpatory or is impeachment. So that's proven to be a workable determination. Counselor, let me take you back to the point you were making earlier about policy here. It seems to me the district judge said that the policy was send this material up to the chief and the chief makes a decision. The policy may not have been unconstitutional, but it failed here. You made a comment in your brief, too, that actually when a policymaker makes a decision, that's policy. His decision not to look at this is the policy that you're talking about, that single time, and it happened other times, but the single time in this case that he decided not to look at all that as a policymaker, that became a policy. Is that your point? Yes, Your Honor. I think there are two ways. Do you have anything to support that as far as case law is concerned? I don't have a case directly at hand, Your Honor. But I want this to be the case. This would be. Well, Your Honor, I think this is an unusual example where you have the policymaker who is, in fact, the person who is making the decision. And all of the policymaker cases generally of which I'm aware, there's a divide between the subordinate who is engaging in the conduct that is alleged to have caused the constitutional deprivation from the policymaker himself. These cases about single incident liability, etc., are trying to prove up from the individual subordinate to the policymaker. How can you distinguish policy in the context we're talking about now from just simple negligence? I'm sorry, Your Honor? Failure to perform a duty that he imposed on himself through a previous policy. Why isn't that failure just negligence as opposed to a new policy? Well, I think the question is, is it negligent or is it deliberately indifferent? And I think in this context, it's plainly deliberately indifferent because there's an obligation that he had imposed on himself that braiding violations would result. When he placed on himself the obligation to look at IAD files and then determine if there was exculpatory information to provide to the prosecutor, once he's established that obligation, the failure to actually abide by the own policy that he's established is, I think, the very definition of deliberately indifferent. And I'll say, if there's any dispute as to whether or not that's accurate, then that would be a difficult case for you. But my question, this has just helped me with Monell liability, it's behind that, is what Monell case do you have that premises city liability on a policymaker's deliberate indifference to a right that the circuit court had said doesn't exist? Well, in other words, it's not clearly established. We actually had said it doesn't exist. So how could the policymaker be deliberately indifferent to a constitutional right that we'd said didn't exist? I'd love a case. So I don't have a case that's on those unique facts for you, Your Honor. And I can look for one after the argument. That'd be helpful. No. But let me say, though, what is the case here is that prosecutors, it is well established. Oh, hold on, counsel. I kept you there. But I want you specifically to respond to the questions that are asked. I'm not giving you additional time to argue. So if you've got a succinct response to Judge Higginson, I want you to make that. He's asked you for a case. So is your answer you don't have a case? I don't. If you have, then you probably have answered his question. Can I offer one point? No, sir. You can do what I just said. If you've got a case, then you can. If not, then I'm at Judge Elrod. But I'm holding your own question time, not more argument time. You ready? All right, Judge Elrod. I want to make sure I understand your answer as to why we can't just render on the single incident and the policy. Are your answers that the case is not procedurally postured to do so, given the summary judgment posture? Second, that factually, at the very least, there's a factual issue on it. And third, that you have an alternative theory that was pleaded so we could not render. Did I get the whole universe of your answers as to why we can't render? Or did I miss something? I would just add that we think we're correct on the merits. But additionally, I think your three arguments are all correct here. They're not my arguments. I'm just trying to get your point. Your characterization of our position of those three points as to why the court cannot render on that, that is correct, yes. Okay, thank you. All right. Thank you, counsel. All right. Next up, Mr. Jordan. Well, I live in north Louisiana where it's icy. We say Jordan. So do you say Jordan or you say Jerdan? Jordan. Jordan it is. You're up. Chief Judge Stewart, and may it please the court, Jason Jordan on behalf of the National Association of Criminal Defense Lawyers. For two reasons, this court should hold that the due process clause requires the prosecution to disclose evidence material to innocence before a defendant pleads guilty. First, as a legal matter, Brady v. Maryland and its progeny support the recognition of a defendant's right to receive material exculpatory information before conviction, whether that conviction is by trial or by plea. How do you respond to Judge Higginson's hypothetical where you, at arraignment, you're asked guilty or not guilty and the plea is guilty. Can that plea be accepted? Your Honor, my client's position is no, that it can't be. But in terms of the practical realities of that position, I would note that it is not as significant as the government's position would suggest for a couple of reasons. First, the U.S. Supreme Court's decision in Kiles has long placed an obligation on the prosecution to determine whether this type of information is in the hands of others acting on the government's behalf. So these procedures are already in place. What we're talking about is really moving those procedures to, possibly moving those procedures to an early stage in the case, as I believe Judge Costa had referenced. There's variance already in localized practices within district courts. And as to those localized practices, one that we know about is from the U.S. Supreme Court's decision in Ruiz. There, the court will recall that the plea agreement in that case was a pre-indictment, fast-track plea agreement. Yet the prosecutors in that case had found it workable to include the safeguard that the Supreme Court repeatedly emphasized in that opinion. That is, that exculpatory information would be disclosed. And as Mr. Alvarez's counsel recognized, the prosecutor's manual has long recognized the distinction between these two types of impeachment evidence and exculpatory evidence. So when we look at the obligation that Kiles has long imposed, with the evidence that we have from Ruiz itself, that prosecutors were complying with this obligation, it shows that it is both consistent with existing precedent and workable for prosecution. So you were going beyond what they're arguing. Alvarez argues for mandatory disclosure of non-impeachment exculpatory evidence. Somewhere, somebody was arguing for required disclosure of actual, factual innocence. Are you arguing to overturn Ruiz and just say, all the Brady obligation? Absolutely not, Your Honor. The rule that we would propose... Why not? Because, Your Honor, the information that our positions focus on is material exculpatory information. And to the point that Judge Weiner raised... And Ruiz called it, they said, the question before us is material exculpatory impeachment evidence. I don't recall the exculpatory being used in conjunction with impeachment in the opinion, Your Honor. Well, I can quote it. It's when Justice Breyer sets up the issue before the court. Of course, Justice Breyer could have been inaccurate in his characterization, but I think we would hesitate to call him that. I would agree with your hesitation, Your Honor. What I recall is, in the first paragraph of the court's opinion in Ruiz, they quote from an appendix to the petition procedure. And that quote, as I recall, does not include the word exculpatory. And I think to the heart of some of the issue you're asking about, Your Honor, I would note that if you were to review the briefing and even the argument in the Ruiz case, it was much broader than what the court ultimately decided. Let me ask you to answer a question that Justice Scalia asked at argument, since you've reviewed it. Justice Scalia asked, why would we interpret the Fifth Amendment and to facilitate the pleading of guilty by innocent people? I know what the defense counsel answered there. How would you answer that question? Your Honor, I think counsel answered there. I don't think this rule in any way encourages innocent defendants pleading guilty. What this rule is meant to do is to safeguard against that risk by arming them with sufficient awareness about what is likely the most relevant circumstances. If they know they're guilty and want to confess, all this rule does is give them information to falsely state to the court that they're guilty when they're not. Your Honor, I would disagree with that in the sense that this type of information, if an individual is in fact guilty of a crime, the rule we propose would indeed apply even for those that are guilty. But by turning over material exculpatory evidence, by definition, that type of evidence tends to refute their factual guilt for the crime. So I would think that the hypothetical you've envisioned would be a very narrow scope, whereas... Your Honor, this time's running out. Do you accept the ABA's restriction on a pre-plea Brady rule that the prosecutor has no duty to search for favorable evidence? It's specific to the prosecutor. Do you accept that if we were to see a Brady rule? Your Honor, that would be a rule that the court could certainly adopt. But my client's position is that the rule would be broader. And as I was discussing earlier with Judge Owen, that that, in fact, is a workable rule, both consistent with Kyle's longstanding instruction to search out this information and the pragmatic evidence that we have from Ruiz itself, that prosecutors pre-indictment in a fast-track plea situation were committing to turn this information over. At the plea hearing, it's not just a situation in which the defendant stands up and mutters the word guilty. There is, of course, a factual examination. And the judge, at some point, asks something like, are you pleading guilty because you are guilty? And are the facts that have been announced by the prosecution basically true? So there's a thorough vetting of whether this person really still wishes to plead guilty, not just as some magical incantation, but because the person says, yes, I did the crime. So there are all sorts of protections there in every properly conducted guilty plea. I understand Your Honor's point. A two-part answer, if I may. Those protections are fundamentally corrupted when this very specific type of information that goes directly to factual guilt is withheld. And I would draw— I just don't understand that. When the defendant is asked, are you pleading guilty because you are guilty, and here are the facts. I don't understand how that proceeding is corrupted. Your Honor, I would— and the second part of the answer was drawing from the U.S. Supreme Court's precedent in the ineffective assistance of counsel context. If you look at Hill and Padilla, both of those cases involved defendants who had entered a guilty plea and sworn they had committed the crime. But the court did not rest— did not hold that that wipes away the significance, the constitutional importance of the protections that come before. They recognize that despite those sworn admissions of guilt and despite the rule of the Levin process having been gone through, there are circumstances in which the plea is simply not constitutionally valid. Let me— I mean, I asked you the question I asked Mr. Alvarez's attorney, and that is, since Alvarez was represented in his guilty plea by a fellow who had been a criminal lawyer in Brownsville for 20 years, and since there were signs posted all over the jail, you are being videoed, which— and we know the defendant gave the bird to at least one of the video cameras. Why didn't he have an open and shut-in effective counsel claim against his own lawyer? Your Honor, I'm not implying on whether he would have had that claim, but as to whether the— Well, so why should we constitutionalize something where the facts of this case indicate that the so-called exculpatory— the so-called non-exculpatory impeachment evidence was freely available to both sides? Your Honor, in that regard, I would direct the court to the U.S. Supreme Court's decisions in Aggers and then the reasoning reiterated in Kyle's. In Aggers, you will recall— Well, I'm talking about ineffective counsel. I realize that counsel— I realize that from the Brady standpoint, the prosecution is not required to wait for counsel to make the request, but counsel himself, even the ABA says this, is supposed to make a thorough investigation. Yes, Your Honor, but— But this fellow told him he was guilty, evidently, so. I'm not sure, Your Honor, but in terms of how that process affects the individual that's in the seat and facing the deprivation of their liberty, that individual may or may not have an ineffective assistance of counsel claim. But that individual, under the reasoning in Brady, and as you noted, the standard that recognizes for this specific type of information, there's an affirmative obligation on the government to turn it over because it goes so critically to the defendant's factual innocence. Well, now, you're not taking a position on the status of this video, are you? No, Your Honor, we are not. As we noted on page 25 of the record, our position assumes that otherwise the conditions for a Brady violation would be met. Are you assuming that it would have established factual innocence or that it would have simply been non-impeachment exculpatory? I mean, what is your— exactly what is the scope of the right you're arguing for? Your Honor, the right we are arguing for would not require evidence that conclusively establishes anything, such as a fingerprint or DNA. But it would require the evidence to be exculpatory, which you can look at the definition of last-law dictionary, and the other courts that have already recognized and enforced this rule have defined exculpatory evidence as evidence that undermines proof of the facts necessary to establish guilt. Does the right— Oh, I apologize. Oh, I'll come in. Judge Ho had a question. I think both you and your co-counsel have invoked the assistance of counsel provision of the Sixth Amendment as an analogy to Brady, and I certainly appreciate the reference to constitutional structure. I'm wondering if an even better analogy might be the Confrontation Clause or the Sixth Amendment Process Clause, inasmuch as those are more like Brady to evidence. Are those closer analogies, even better than assistance of counsel? I think those could be analogies, Your Honor, but I think that the significance of the analogy to the ineffective assistance of counsel is given the development of the case law in that area as it specifically relates to this issue, and— Fair enough. I guess what I'm wondering, though, is if we accept your proposition that Brady follows effective assistance of counsel and applies to plea bargains, I think we would— logic would dictate it applies to confrontation, to compulsory process, which means we've now established, by logic, a constitutional right to depositions. A defense counsel can now insist on a deposition of a rape victim, which I believe contradicts both Texas and federal law. Yes, Your Honor, and I know I'm out of time, so to distinctly answer, our position is that Ruiz and the other cases cited therein, Tillett, McMahon, Brose, the rule we advocate for would not disrupt those limitations. So we're not seeking— we're not advocating for a rule that would lead to the vast constitutionalization of plea bargaining, but rather one that is narrowly focused on this particular issue that remains carved out after Ruiz. I think I have one more question. Given that you're representing the criminal defense attorneys, is it your position that this would encourage integrity in the representation such that there would not be encouraging the person to go ahead and plea and just say it so that you can get the good deal? Is that part of the argument, that it encourages integrity in the— and truth in the system? Absolutely, Your Honor. Our position is that this encourages integrity at all levels, and some of the secondary sources that we've cited in the first section of our brief recognize the reality that Your Honor is talking about, that even in the Rule 11 context, as Judge Smith mentioned, defense counsel are, for better or worse, sometimes advising their client, you just need to say this in order to avoid this risk. And so recognizing this protection would be a guard against that type of unfortunate incident. All right. Thank you, Counsel. Appreciate your brief and argument. Ms. Piatta, you have rebuttal. Last words. Thank you, Your Honor. I'd like to come back to a few points that I started off with today, and I'd like to work off of one of the points that Judge Jolly made earlier, and that is, you know, when we're dealing with the police situation, we're really not talking about Brady at all. We're talking about a different set of due process rights. I mean, the Ruiz case effectively said that we're not dealing with Brady because whereas in Brady, you do have the right to impeachment evidence as one of your trial rights when you're in a plea context, you don't have the right to impeachment evidence, period. And that's the way that the other circuits have dealt with that. So from Ruiz, we can assume that we're not dealing with Brady anymore. We're dealing with something else. I mean, we're all talking Brady, but really we're in a different due process analysis. And in all of these cases that deal with prosecutors' obligation to come forward with the evidence at least before the trial so that the criminal defendant can make use of it in the trial, in the fact-finding and truth-finding context, you know, doesn't really apply in this sort of context because it's the defendant that has control over whether he pleads guilty. He can come into court and on simple arraignment can say, I'm guilty rather than plead innocent. He can go up to a guilty plea context as there was in this case where a Texas procedure follows Federal Rule 11 pretty closely according to your Matthews case. You go through all the procedure, he can plead guilty. In this particular situation, doesn't it make sense to put the burden on his counsel if he wants to do discovery, send subpoenas to the city as to whether or not there's anything else as opposed to expecting that the police officer that delivers a probable cause package to the prosecutor's office is going to have everything, will have emptied all the files. I mean, and I'm talking about all the civil service files where there may be impeachment evidence in the civil service files or possibly other evidence. You know, there's a statute that I wanted to bring up in context of understanding how the police view a request for information that deal with personnel issues. It's in our civil service statute, 143.089 of the local government code. And this sort of protection for employment files of police officers is common throughout the country. And I know that there are a number of cases that deal with what do you do with grading materials that may be in civil service files and different states have different approaches. Well, there is in Texas an approach where they use a Ritchie-type hearing where the judge will review civil service materials for Brady information and disclose it. So, but the defense should make use of the statutory procedures in Texas to avail themselves of the discovery process, subpoena the records, have the judge review it and turn over all the Brady information. You know, they are in the position The Brady right exists at a minimum of a trial and a punishment. So in the situation where the judge is doing the sentencing after a guilty plea, would you just say that the guilty plea waives the right to Brady material at sentencing? Well, if he's pled guilty, then he's waived the right to the Brady information as far as the trial right is concerned. But as far as a... And the prosecutor wouldn't have an obligation at sentencing where the Supreme Court has said the right applies to disclose information favorable to the accused? I think that if he's waived that trial right, he's waived that trial right. The problem in this case is that you had a very, very quick turnover from the time that the probable cause package was submitted to the prosecutor to the time that an indictment was filed and a guilty plea was heard. There's no evidence in the record, and as I understand it, there wouldn't be any evidence to suggest that the prosecutor was in touch with the city from the time that they received the probable cause package until the time that they negotiate the plea and the defendant gives his plea. So what do the police know? They may be submitting these things to the prosecutor, probable cause... I agree with you. Are we then encouraging police departments and prosecutors to have sort of a deliberate ignorance of each other and not to talk to each other so that the prosecutor can just go, oh, I didn't know. I mean, gee, they changed the rule about video versus closed circuit, and I didn't know anything about that. And everybody is then sort of forced into a world of ignorance in order to avoid the... Yeah, obviously there was some ignorance in this situation. I understand that there are cases that say that there is a duty on the prosecutor to inquire what evidence is available. The prosecutor obviously is the one that frames the complaint. He's the one that frames the indictment. The prosecutor is in a position to know what's relevant, what's not, what's material, what's not. They're the ones that can make the inquiry of the police department, as can defense counsel. But the notion that once the police submit a probable cause package to the prosecutor and there it goes and there may be an indictment or not, if the police haven't heard back from them, are they to assume that there is something more that the police need to do? To me, this is a question that's raised by this case. We're talking about the prosecutor's duties and whether there should be more disclosure by the prosecutor in the context of giving a guilty plea. But this case involves liability on the part of the city for a police officer not turning things over in time for the defendant to know that that evidence existed at the time that they gave a guilty plea. To me, there's a very important difference in framing what the duty is. Got a final question from Judge John. In a case like this, in which the defendant says he is not guilty and he knew he was not guilty, he says, at the time that he entered the plea because he didn't want a prison sentence, is the Nolo Contendere plea recognized in Texas as a guilty plea? Yes, it is. And so anybody that wants to do what he did would plead Nolo Contendere. And that would be the same as a guilty plea? As I understand it, conviction can be entered on a Nolo Contendere plea. As I understand it, that a guilty plea, or a Nolo Contendere is considered the same as a guilty plea for purposes of... Then would that individual have a Brady right to come back then and set aside his Nolo Contendere plea because there was... You said one question. Okay. He says... I'm asking more of you to give sufficient answers. All right, quick. All right. Thank you, file counsel, for the briefing and filings that you made and for responding to the court's questions. That concludes the oral argument session. Case will be submitted. We stand in recess.